**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|                                               |     |                          |
| --------------------------------------------- | --- | ------------------------ |
| **LARRY BECTON,**                             | :   |                          |
|                                               | :   |                          |
| **Plaintiff,**                                | :   | **Case No. 2:05-cv-1143** |
|                                               | :   |                          |
|                                               | :   |                          |
| **v.**                                        | :   | **Judge Holschuh**       |
|                                               | :   |                          |
|                                               | :   |                          |
| **STARBUCKS CORPORATION dba**                 | :   | **Magistrate Judge Abel** |
| **STARBUCKS COFFEE COMPANY,**                 | :   |                          |
|                                               | :   |                          |
| **Defendant.**                                | :   |                          |
|                                               | :   |                          |

**<u>MEMORANDUM OPINION & ORDER</u>**

Plaintiff Larry Becton filed suit against Defendant Starbucks Coffee Company to recover for injuries he sustained when hot coffee spilled, burning his hand, chest, and abdomen. Plaintiff asserts state law claims of negligence and products liability. The Court's jurisdiction is based on diversity of citizenship. <u>See</u> 28 U.S.C. § 1332. This matter is currently before the Court on Defendant's motion for summary judgment (Record at 18), Defendant's motion in limine to disregard the statements contained in paragraphs 4 and 5 of Becton's affidavit, and motion for reasonable expenses and attorney's fees (Record at 20), and Plaintiff's motion for reasonable expenses and attorney's fees (Record at 22).

**I.      BACKGROUND AND PROCEDURAL HISTORY**

On November 12, 2003, Plaintiff Larry Becton entered the Starbucks store located at 3954 Morse Crossing in Easton Square in Columbus, Ohio and ordered two large hot coffee beverages to go. (Compl. at ¶¶ 3, 5; Becton Dep. at 37-39). A Starbucks employee placed lids on the cups and put the cups in a beverage carrier. (Becton Dep. at 40-41, 49-50). Plaintiff picked up the

beverage carrier and carried it with two hands, one on each side, just above his waist and parallel to the floor, and proceeded to the exit.  (Id. at 56).  As he attempted to exit the store by pushing the door open with his right hip, the lids came off and the coffee spilled, burning his chest, abdomen, and hand.  (Id. at 57-58).

Plaintiff states that a young woman then approached him and identified herself as the store manager.  (Id. at 51; Becton Aff. ¶ 5).  She apologized to him, handed him some paper towels, asked if he was hurt, and replaced both of his beverages.  (Becton Dep. at 51-52, 64).  Plaintiff further states that the manager, who said that she had witnessed the accident, apologized for the lids not being properly attached to the cups and stated that the cups and lids must have been defective.  (Becton Aff. ¶ 5; see also Becton Dep. at 52).  Becton was treated at Urgent Care for the burns.  He allegedly suffers ongoing physical and psychological problems as a result of the accident.

On November 14, 2005, Plaintiff filed a complaint in the Franklin County Court of Common Pleas, asserting claims of negligence and products liability.  Defendant removed the action to federal court and later filed a motion for summary judgment.  Plaintiff filed a response brief which contained his sworn affidavit.  Defendant then filed a motion in limine, asking the Court to disregard certain statements contained in that affidavit.  Defendant also moved for reasonable expenses and attorney's fees pursuant to Federal Rule of Civil Procedure 56(g).  Plaintiff responded with his own motion for reasonable expenses and attorney's fees.  The Court turns first to the motion in limine.

## II.    MOTION IN LIMINE

Defendant has moved to strike Paragraphs Four and Five of Plaintiff's affidavit. Paragraph Four states, "[u]pon trying to exit Starbucks, the lids exploded off of the cups projecting and propelling scalding hot liquid to burn my chest, abdomen, and hand." (Becton Aff. ¶ 4). Paragraph Five states, "[a] woman identifying herself as the manager of Starbucks indicated to me that she witnessed the accident, and apologized for the lids not being properly attached to the cups, and further indicating that those particular cups and lids must have been defective." (Id. ¶ 5). For the reasons stated below, the Court denies Defendant's motion to strike Paragraph Four. The Court also denies Defendant's motion to strike Paragraph Five except for the manager's statement that the "cups and lids must have been defective."

### A.    Paragraph Four

Defendant asks the Court to disregard Plaintiff's statement that the "lids exploded off of the cups" (Becton Aff. ¶ 4) because: (1) it directly contradicts Plaintiff's deposition testimony that he did not see how the coffee spill occurred; and (2) it is not based on his personal knowledge as required by Federal Rule of Civil Procedure 56(e).

The law is clear that a party cannot create a genuine issue of material fact by filing an affidavit, after a motion for summary judgment has been made, that essentially contradicts his earlier deposition testimony. Penny v. United Parcel Serv., 128 F.3d 408, 415 (6th Cir. 1997) (citing Reid v. Sears, Roebuck & Co., 790 F.2d 453, 460 (6th Cir. 1986)). The following exchange occurred during Plaintiff's deposition:

> Q. Okay. Now, you mentioned that both lids flew off.
> A. Uh-huh.
> Q. Did you see that happen?
> A. The only thing I felt was the burn.
> Q. Did you see what really happened to the cups, or did you simply feel

> the burn?
>
> A.    I felt the burn.
>
> ***
>
> Q.    Okay.  Did you see the coffee come out of the cups and go onto your person?
>
> A.    It was like a nanosecond.
>
> Q.    Okay.  I'm just saying did you see it, or did you simply feel the burn?
>
> A.    I just felt the burn.
>
> Q.    Okay.  So you did not see the coffee come out of the cups and hit your person, you just felt the burn; is that correct?
>
> A.    Yeah.

(Becton Dep. at 58-60).

In the Court's view, Paragraph Four of Plaintiff's affidavit does not contradict this deposition testimony.  Plaintiff's affidavit does not state that he <u>saw</u> the lids detach from the cups or <u>saw</u> the coffee spill onto him.  It simply states that the "lids exploded off of the cups," propelling hot coffee onto his chest, abdomen and hands.  Moreover, the fact that Plaintiff did not actually see the lids come off does not mean that he lacks personal knowledge concerning the nature of the accident.  Certainly, one can gain personal knowledge through senses other than sight.  Plaintiff testified earlier in his deposition that he was carrying the coffee above his waist, parallel to the floor "when both of the tops just came off and coffee shot out of there . . . everything <u>shot up</u>, shot out of there."  (<u>Id.</u> at 56-58) (emphasis added).  The Court also notes that even though Plaintiff testified that he was carrying the coffee right above his waist, he burned not only his abdomen and hands, but also his chest.  These injuries are consistent with his testimony that the coffee "shot up" out of the coffee cups.  For these reasons, the Court denies Defendant's motion to strike Paragraph Four of Plaintiff's affidavit.

4

B.      **Paragraph Five**

Defendant raises three arguments as to why the Court should disregard Paragraph Five of Plaintiff's affidavit, which states, "[a] woman identifying herself as the manager of Starbucks indicated to me that she witnessed the accident, and apologized for the lids not being properly attached to the cups, and further indicating that those particular cups and lids must have been defective."  (Becton Aff. ¶5).

First, the Court will address Defendant's argument that Plaintiff's statement contains inadmissible hearsay.  It is well-settled that inadmissible hearsay may not be used to support or oppose a motion for summary judgment.  Lucas v. Chance, 121 F. App'x 77, 79 (6th Cir. 2005) (citing Carter v. Univ. of Toledo, 349 F.3d 269, 274 (6th Cir. 2003)); Wiley v. United States, 20 F.3d 222, 225-26 (6th Cir. 1994); Fed. R. Civ. P. 56(e) ("supporting and opposing affidavits shall . . . set forth such facts as would be admissible in evidence").

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c). Plaintiff does not dispute that Paragraph Five falls within this definition.  Plaintiff argues, however, that because the statement is an admission of a party opponent, it is not hearsay. Federal Rule of Evidence 801(d)(2) provides, in pertinent part, that a statement is not hearsay if :

> The statement is offered against a party and is . . . (D) a statement
> by the party's agent or servant concerning a matter within the
> scope of the agency or employment, made during the existence of
> the relationship . . . The contents of the statement shall be
> considered but are not alone sufficient to establish . . . the agency
> or employment relationship and scope thereof under subdivision
> (D).

Fed. R. Evid. 801(d)(2).

5

Defendant argues that this hearsay exception does not apply because Plaintiff has failed to offer any evidence, other than the purported statement itself, to prove that the woman who allegedly made the statement was a manager or agent of Starbucks.  As noted in a case cited by Defendant, however, the existence of the agency relationship can be established by circumstantial evidence.  Pappas v. Middle Earth Condo. Ass'n, 963 F.2d 534, 538 (2d Cir. 1992).  In this case, not only did the woman identify herself as the manager, but she apologized, gave Plaintiff paper towels, asked him if he was hurt and, perhaps most significantly, replaced both beverages for him.  (Becton Dep. at 51-52).  Her conduct clearly supports a finding that she worked for Starbucks and was acting in the scope of her employment when she made the statement.  Therefore, the manager's statement is properly characterized as an admission by a party opponent, non-hearsay under Federal Rule of Evidence 801(d)(2)(D).

Second, Defendant argues that the manager's statement, that the cups and lids were defective, is inadmissible because Plaintiff admitted at his deposition that he has no personal knowledge that any defect existed in the cups or lids.  (Becton Dep. at 63).  According to Defendant, because Plaintiff lacks personal knowledge concerning the content of the manager's statement, his statement about what she said is inadmissible.  This argument lacks merit. Plaintiff need only have personal knowledge that the manager made the statement; he need not have personal knowledge of its accuracy.  See Williams v. AMF Inc., 512 F. Supp. 1048, 1052 (S.D. Ohio 1981).  In this case, Plaintiff clearly has personal knowledge that the manager made the statement at issue.

Finally, Defendant argues that the statement is inadmissible because Plaintiff has not laid a proper foundation for the manager's statement that the lids were not "properly attached to the cups" or her opinion that "those particular cups and lids must have been defective."  Defendant notes that even though it has disclosed the identity of all of the managers and employees who were working in the store on the date of the accident, Plaintiff has been unable to discover the identity of the manager who allegedly assisted him, has not deposed her, and cannot call her to testify at trial.  While these deficiencies may very well make it more difficult for Plaintiff to succeed at trial, they are not necessarily relevant to the question of whether the statements themselves are admissible.[1]

Federal Rule of Evidence 701 governs the admissibility of the first half of the manager's statement – that she witnessed the accident and apologized for the lids not being properly attached to the cups.  Opinions and inferences of a lay witness are admissible if they are: (a) rationally based on the perception of the witness; (b) helpful to a clear understanding of the determination of a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge.  Fed. R. Evid. 701.

In this case, the first half of the manager's statement meets each of these requirements.  Because she witnessed the accident, one can logically infer that her statement -- that the lids were not properly attached to the cups -- was rationally based on her perception.  One of the key facts at issue in this case is whether the lids were securely fastened to the cups.  The manager's

---

[1]  Defendant also argues that Plaintiff's recollection of what the manager said should be viewed with suspicion in light of Plaintiff's admitted memory problems.  This argument clearly goes to the weight of the evidence rather than its admissibility.

statement is certainly helpful to a clear understanding of what caused the coffee to spill.  Finally, it is not based on any specialized knowledge, but rather on the manager's observations.  Because the first part of the manager's statement meets the requirements of Federal Rule of Civil Procedure 701, the Court denies Defendant's motion to strike it.

The Court, however, grants Defendant's motion to strike the second part of the manager's statement -- that these particular cups and lids must have been defective -- because it is couched as a legal conclusion.    In Mitroff v. Xomox Corp., 797 F.2d 271 (6th Cir. 1986), the Sixth Circuit noted:

> Although testimony which embraces an ultimate issue is not objectionable (Fed.R.Evid. 704), seldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an "oath helper."

Id. at 276.  As the Sixth Circuit noted in Torres v. County of Oakland, 758 F.2d 147 (6th Cir. 1985), the problem with lay testimony containing a legal conclusion is that it conveys the witness's unexpressed, and perhaps erroneous, legal standards to a jury, and "invade[s] the province of the court to determine the applicable law and to instruct the jury as to that law."  Id. at 150.  In resolving the question of whether to admit or exclude such testimony, the trial court should determine "whether the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular."  Id. at 151.  If they do, the court should exclude the statement.  Id.

Under Ohio law, a product is "defective" if it deviates from design specifications, if the foreseeable risks associated with its design exceeds the benefits, or if it does not conform to

representations made by the manufacturer. See Ohio Revised Code §§ 2307.74, 2307.75, 2307.77 (governing product liability claims). When the Starbucks' manager stated that the cups and lids must have been "defective," it is highly unlikely that she had any of these specialized definitions in mind. Even if the manager were familiar with the Ohio statutes governing products liability claims, a jury, after being instructed on the applicable law, would be equally capable of determining the ultimate issue of whether the cups and lids were defective. As such, the manager's statement would not be helpful to the trier of fact as required by Federal Rule of Evidence 701. For these reasons, even if otherwise admissible as an admission of a party opponent, it cannot be considered. See Mitroff, 797 F.2d at 276.

## III. MOTIONS FOR ATTORNEY'S FEES

In connection with Defendant's motion in limine, both parties have filed motions for reasonable expenses and attorney's fees. Defendant bases its request on Federal Rule of Civil Procedure 56(g), which allows a court to award reasonable expenses and attorney fees when an affidavit submitted in connection with a motion for summary judgment is "presented in bad faith or solely for the purpose of delay." Fed. R. Civ. P. 56(g). In this case, there is no evidence that Plaintiff submitted his affidavit in bad faith or solely for the purpose of delay. As the Court previously held, the statement in Paragraph Four of Plaintiff's affidavit did not contradict his previous deposition testimony and was based on Plaintiff's personal knowledge. Moreover, although the Court agreed to strike one portion of Paragraph Five of the affidavit, Plaintiff offered credible arguments as to why the statement should be deemed admissible. Defendant's motion is therefore denied.

When Plaintiff filed his memorandum in opposition to the motion in limine, he also requested reasonable expenses and attorney fees, arguing that Defendant's motion in limine and request for attorney fees were without merit.  Although Plaintiff failed to cite any statutory basis for his request, at least two provisions could allow for such an award.  Federal Rule of Civil Procedure 11 allows a court to award "some or all of the reasonable attorney's fees and other expenses incurred" when the opposing party files a motion that is "presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(c)(2), (b)(1).  Similarly, under 28 U.S.C. § 1927, a court may award sanctions against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously."

In this case, the Court finds no basis for awarding fees and expenses under either of these provisions.  There is no reason to believe that Defendant filed either motion for any improper purpose, or that defense counsel was multiplying the proceedings unreasonably and vexatiously. The fact that the Court granted Defendant's motion in limine in part counsels against an award of sanctions.  For these reasons, the Court denies Plaintiff's request for expenses and attorney fees, and turns now to the merits of Plaintiff's claims.

## IV.     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has moved for summary judgment on Plaintiff's claims of negligence and products liability.

### A.     Standard

Although summary judgment should be cautiously invoked, it is an integral part of the

Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial,  . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)).  See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried.  Lashlee v. Sumner,  570 F.2d 107, 111 (6th Cir. 1978).  The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law.  Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003).  All the evidence and facts, as

11

well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 247-48 (emphasis in original).  A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties."  Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984).  See also Anderson, 477 U.S. at 248.  An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.  Celotex, 477 U.S. at 322.  The nonmoving party must demonstrate that "there is a genuine issue for trial," and "cannot rest on her pleadings."  Hall v.

<u>Tollett</u>, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

 The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party.  <u>Anderson</u>, 477 U.S. at 252.  The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts."  <u>Moore v. Phillip Morris Companies, Inc.</u>, 8 F.3d 335, 340 (6th Cir. 1993).  The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence.  <u>Anderson</u>, 477 U.S. at 251-52; <u>Lansing Dairy, Inc.</u>, 39 F.3d at 1347.

**B.   Discussion**

According to Plaintiff's memorandum in opposition to the motion for summary judgment, his claims of negligence and products liability are brought under the umbrella of Ohio Revised Code § 2307.78, which governs the liability of a "supplier."  A "supplier" is defined as "[a] person that, in the course of a business conducted for the purpose, sells, distributes, leases, prepares, blends, packages, labels, or otherwise participates in the placing of a product in the stream of commerce."  Ohio Revised Code § 2307.71(A)(15)(a)(i).

13

A "supplier" can be held independently liable under § 2307.78(A)(1) if "[t]he supplier in question was negligent and that negligence was a proximate cause of harm for which the claimant seeks to recover compensatory damages."[2] A "supplier" can also be held derivatively liable if the manufacturer of the product is subject to liability under the Ohio Products Liability Act, Ohio Revised Code §§ 2307.71-2307.77, and one of eight other conditions is met. See Ohio Revised Code § 2307.78(B).

### 1.    Negligence

The Court turns first to Plaintiff's negligence claim. Plaintiff alleges that Defendant was negligent in assembling the cups and lids in question. Under Ohio law, "in order to recover in an action for products liability based upon negligence, a plaintiff must show that the defendant owed him a duty, that the duty was breached and that the injury proximately resulted from the breach." Freas v. Prate Constr. Corp., Inc. (1991), 60 Ohio St. 3d 6, 573 N.E.2d 27.[3] Defendant argues that it owed no duty to Plaintiff to securely attach lids to the cups and that, even if it did owe such a duty, Plaintiff has no evidence that Defendant breached that duty or that such breach

---

[2] A "supplier" can also be held independently liable under § 2307.78(A)(2) if "[t]he product in question did not conform, when it left the control of the supplier in question, to a representation made by that supplier, and that representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages." Since Plaintiff has not alleged that Starbucks made any representations about the cups or lids, this subsection is inapplicable.

[3] These are, of course, the same elements of a common law negligence claim. See Mussivand v. David (1989), 45 Ohio St. 3d 314, 318, 544 N.E.2d 265. Therefore, whether Plaintiff's claim is viewed as a products liability claim brought under Ohio Revised Code § 2307.78(A)(1), or as a common law negligence claim, the analysis is the same.

caused Plaintiff's injuries.[4]

### a.    Duty

The existence of a duty in a negligence case is a question of law.  See Mussivand v. David (1989), 45 Ohio St. 3d 314, 318, 544 N.E.2d 265.  Defendant relies on Reese v. Burger King Restaurant, No. 89AP-856, 1990 WL 12383 (Ohio Ct. App. Feb. 13, 1990), for the proposition that Defendant did not owe a duty to Plaintiff to attach any lids at all.  In Reese, plaintiff was burned when a cup of hot water, ordered at a drive-thru window at Burger King, tipped onto her lap.  She alleged that Burger King breached its duty to securely attach lids to the cups of hot water.  The appeals court, however, affirmed the trial court's grant of a directed verdict in favor of Burger King, stating that:

> Appellants have failed to cite any case law establishing that appellees had a duty to place any lid at all upon the cups of hot water let alone to place them so securely that the contents would not spill when tipped over.  There was no evidence of any promise by appellees to do so, nor was there reasonable reliance upon any inference that the lids would prevent spillage if the cups were upset.

Id. at *2.

Plaintiff concedes that there is little, if any, case law specifically holding that restaurants have an affirmative duty to securely place lids on cups containing hot liquids.  His theory of liability, however, is based on a different rule of law known as the "voluntary duty" rule:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to

---

[4]  While the full extent of Plaintiff's damages is not clear, Defendant does not dispute that Plaintiff suffered burns to his hand, abdomen, and chest when the coffee spilled.

> liability to the other for physical harm resulting from his failure to
> exercise reasonable care to perform his undertaking, if
>> (a)    his failure to exercise such care increases the risk of
>> such harm, or
>> (b)    the harm is suffered because of the other's reliance
>> upon the undertaking.

Restatement (Second) of Torts § 323 (1965).  This Restatement section has been adopted by

Ohio courts.  See Seley v. G.D. Searle & Co. (1981), 67 Ohio St. 2d 192, 202 n.7, 423 N.E.2d

831.  Plaintiff contends that, because Defendant voluntarily undertook the task of putting lids on

the cups, Defendant had a duty to act with reasonable care.  Because Plaintiff has asserted a

viable theory of liability distinguishable from that asserted in Reese, the Court rejects

Defendant's argument that it owed Plaintiff no duty to use reasonable care in placing the lids on

the cups.

### b.      Breach/Proximate Cause

The next question is whether Plaintiff has submitted sufficient evidence from which a

reasonable jury could find that Defendant breached the duty to use reasonable care in attaching

lids to the coffee cups, proximately causing Plaintiff's injuries.  Although Plaintiff alleges that a

Starbucks' employee failed to securely fasten the lids to the cups, he has little evidence to prove

it.  In fact, he testified at his deposition that he did not notice anything wrong with the lids when

he picked up the beverage carrier.  (Becton Dep. at 54).  In his complaint, he relies on the

doctrine of *res ipsa loquitur*, which permits a jury to draw an inference of negligence without

evidence of specifically how defendant breached its duty to the plaintiff.  Hake v. George

Wiedemann Brewing Co. (1970), 23 Ohio St. 2d 65, 66, 262 N.E.2d 703.  The parties have

extensively briefed the issue of the applicability of this doctrine.

In the Court's view, however, there is no need to reach the question of whether Plaintiff can rely on the doctrine of *res ipsa loquitur*.  The manager's statement is sufficient to create a genuine issue of material fact on the elements of breach and proximate cause.  After the coffee spilled, the Starbucks manager told Plaintiff that she "saw how it happened."  (Becton Dep. at 52).  Plaintiff stated that the manager "indicated to me that she witnessed the accident, and apologized for the lids not being properly attached to the cups."  (Becton Aff. ¶ 5).  Drawing all reasonable inferences in favor of Plaintiff, a reasonable jury could find that, prior to the accident, the manager observed that the lids were not securely fastened to the cups, and then saw those lids come off the cups when Plaintiff attempted to exit the store, causing the hot coffee to spill and burn him.

Defendant speculates that the manager was simply engaging in good customer relations and that, in actuality, the coffee spilled as a result of Plaintiff's own negligence, and not because the lids were not securely attached to the cups.  A jury may ultimately agree.  Nevertheless, a reasonable jury could also find, based on the manager's statement, that a Starbucks' employee failed to use reasonable care in fastening the lids on the cups, and this breach of duty proximately caused Plaintiff's injuries.

In summary, the Court finds that Plaintiff has presented sufficient evidence from which a reasonable jury could find that Defendant had a duty to securely fasten the lids to the cups, and breached that duty, causing Plaintiff to suffer burns to his hand, chest, and abdomen.  The Court therefore denies Defendant's motion for summary judgment on Plaintiff's negligence claim.

## 2.      Product Liability

Plaintiff also asserts a claim of products liability.  His complaint alleges that the cups and lids at issue "were defective and caused and/or contributed to the Accident and the injuries to Mr. Becton."  (Compl. ¶ 9).  It is undisputed that Defendant did not design or manufacture the cups and lids in question.  However, under Ohio Revised Code § 2307.78(B), Defendant could be held derivatively liable as a "supplier" if:  (1) the manufacturer of the product is subject to liability under the Ohio Products Liability Act, Ohio Revised Code §§ 2307.71-2307.77; and (2) one of eight other conditions set forth in § 2307.78(B) applies.  One of those eight conditions includes a situation where "the supplier marketed that product under its own label or trade name."  Ohio Revised Code § 2307.78(B)(7).  The Court turns first to this second element.

In support of its motion for summary judgment, Defendant submitted the affidavit of Frank Grambo, one of its commodity managers.  Grambo averred that "Starbucks did not separately market the cups and/or lids it used to serve coffee to its customers at its Starbucks stores."  (Grambo Aff. ¶ 3; Ex. B to Mot. Summ. J.).  Plaintiff nevertheless argues that because Defendant serves its beverages in cups and lids which bear its label and trade name, the second element is satisfied.  Defendant does not respond to this argument in its reply brief.

The parties cite to no case law interpreting the term "marketed," as used in § 2307.78 (B)(7), and the Court has been unable to find any case law directly on point.  If the term is defined to mean that a supplier must actually offer the product for sale to the public, then it would appear that Starbucks does not "market" the cups and lids.  Although the cost of the cups and lids is certainly figured into the price Defendant charges its customers for the coffee, the

cups and lids are not sold as a separate product.  However, if the term is defined more broadly to mean that the supplier distributed the product as part of its marketing scheme or otherwise participated in placing the product in the stream of commerce, then Starbucks could easily be found to have "marketed" the cups and lids.

The Court need not decide this issue because, even assuming that Defendant "marketed" the cups and lids under its own label or trade name, Plaintiff has failed to present sufficient evidence from which a reasonable jury could find that the manufacturer of the cups and lids is subject to liability under the Ohio Products Liability Act.  Ohio Revised Code § 2307.73 states:

> (A)   A manufacturer is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by a preponderance of the evidence, both of the following:
>
> (1)   Subject to division (B) of this section, the product in question was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code;
>
> (2)   A defective aspect of the product in question as described in division (A)(1) of this section was a proximate cause of harm for which the claimant seeks to recover compensatory damages.

Ohio Revised Code § 2307.73(A).[5]

---

[5] Ohio Revised Code § 2307.73(B) states, "[i]f a claimant is unable because a product in question was destroyed to establish by direct evidence that the product in question was defective or if a claimant otherwise is unable to establish by direct evidence that a product in question was

Pursuant to § 2307.73(A)(1), Plaintiff must first establish that the product was defective in one of the four ways listed.  In this case, while Plaintiff alleges that the cups and lids were generally "defective," he has not identified his theory of products liability.  In his memorandum contra, Plaintiff clarifies that he is not asserting an inadequate warning claim; nevertheless, it is not clear whether Plaintiff is claiming that the cups and lids were defective in their manufacturing, in their design, or in their lack of conformity with representations made by the manufacturer.  It appears that Plaintiff's failure to identify a particular theory stems, in large part, from deficiencies in discovery.  Plaintiff does not possess the cups, lids or beverage carrier and does not even remember what they looked like.  He has not been able to identify the designer or manufacturer of the cups or lids, and has not been able to identify the serial numbers, model numbers, or lot numbers.  He testified that he cannot identify the alleged defect or how it contributed to his injury, and has no expert to testify that the cups or lids were, in fact, defective. (Becton Dep. at 41-43, 48-49, 62-63, 108-09).  Because of these obvious weaknesses in Plaintiff's claim, the Court need only briefly consider whether Plaintiff has presented sufficient evidence from which a reasonable jury could find a manufacturing defect, a design defect, or a nonconforming defect.

A product has a manufacturing defect if "it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance

---

defective, then, consistent with the Rules of Evidence, it shall be sufficient for the claimant to present circumstantial or other competent evidence that establishes, by a preponderance of the evidence, that the product in question was defective in any one of the four respects specified in division (A)(1) of this section."

standards." Ohio Revised Code § 2307.74. Here, because Plaintiff does not have the cups or

lids at issue and does not even remember what they looked like, he is unable to prove any such

deviation by direct evidence. As the Ohio Supreme Court held in State Farm Fire & Casualty

Co. (1988), 37 Ohio St. 3d 1, 523 N.E.2d 489, "[w]here direct evidence is unavailable, a defect .

. . may be proven by circumstantial evidence where a preponderance of that evidence establishes

that the loss was caused by a defect and not other possibilities, although not all other possibilities

need be eliminated." Id. at 6, 523 N.E.2d at 493-94. See also Ohio Revised Code § 2307.73(B).

However, Plaintiff has failed to identify any circumstantial evidence that would establish that his

injuries were caused by a manufacturing defect and not by other possibilities such as his own

negligence. As such, the Court finds no genuine issue of material fact as to whether the cups or

lids possessed a manufacturing defect under Ohio Revised Code § 2307.74.

"[A] product is defective in design if: (1) it is more dangerous than an ordinary consumer

would expect when used in an intended or reasonably foreseeable manner; or (2) if the

foreseeable risks associated with its design exceed the benefits." Aldridge v. Reckart Equip.

Co., 4th Dist. No. 04CA17, 2006-Ohio-4964, at ¶ 37 (citing Ohio Revised Code § 2307.75).[6] In

Grumnitsky v. Delta International Machinery Corp., 411 F. Supp. 2d 756 (N.D. Ohio 2005), the

court held that "[w]here a plaintiff has 'no expert analysis or other evidence demonstrating that

some aspect of the design was defective, the claim is dismissed.'" Id. at 762 (citing McGrath v.

General Motors Corp., 26 F. App'x 506, 511 (6th Cir. 2002)). In this case, not only does

---

[6] Ohio Revised Code § 2307.75 was amended on April 7, 2005 to remove the consumer
expectation test as a separate test and to include the consumer's expectation as one factor in
deciding whether the foreseeable risks of the design exceed the benefits. However, since
Plaintiff's accident occurred in 2003, this Court must apply the previous version of § 2307.75.

Plaintiff lack expert analysis but, in addition, he cannot possibly demonstrate how the foreseeable risks of a particular design outweigh its benefits when he cannot even identify the design in question.  For the same reason, Plaintiff cannot demonstrate that the design of the cups or lids is more dangerous than an ordinary consumer would expect when used in an intended or reasonably foreseeable manner.  Based on the evidence presented, no reasonable jury could find that a design defect exists.

According to Ohio Revised Code § 2307.77, a product is also defective if "it did not conform . . . to a representation made by [the] manufacturer."  Plaintiff fails to identify any representations made by the manufacturers of the cups or lids, which is not surprising since he has not even been unable to identify the manufacturers.  Clearly, no genuine issue of material fact exists as to whether the cups or lids possessed a nonconforming defect under Ohio Revised Code § 2307.77.

The Court finds that Defendant is entitled to summary judgment on Plaintiff's products liability claim because Plaintiff has failed to present any evidence from which a reasonable jury could find a manufacturing defect, a design defect, or a nonconforming defect in the cups or lids.

**V.     Conclusion**

For the reasons stated above, Defendant's motion in limine (Record at 20) is **GRANTED IN PART and DENIED IN PART**.  The Court strikes the portion of Paragraph Five of Plaintiff's affidavit in which he states that the Starbucks' manager told him that the cups and lids were defective.  However, the Court denies the motion to strike Paragraph Four and the

remainder of Paragraph Five of Plaintiff's affidavit.  The Court **DENIES** both parties' motions for reasonable expenses and attorney's fees (Record at 20, 22).

The Court **GRANTS IN PART and DENIES IN PART** Defendant's motion for summary judgment (Record at 18).  Defendant is entitled to summary judgment on Plaintiff's claims of products liability.  However, genuine issues of material fact preclude summary judgment on Plaintiff's negligence claim.

**IT IS SO ORDERED.**

Date: June 14, 2007                                            **/s/ John D. Holschuh_____**
                                                             John D. Holschuh, Judge
                                                             United States District Court